## No. 480.

### THE MAYOR AND CITY COUNCIL OF MONROE VS. JOSEPH HOFFMAN.

Where by the charter of a municipal corporation it is provided that a vacancy in the office of mayor shall be filled by election, the Governor can not legally fill such vacancy by appointment, in virtue of a general law authorizing him to fill vacancies in municipal offices.

The power of an illegal, but *de facto* mayor of a city (who acts under color of a legal appointment), to represent the city in a legal proceeding, can not be called in question collaterally.

The power to forbid the erection, and compel the removal of buildings formed of combustible materials, within the densely-built-up parts of a town, inheres in municipal corporations, and hence does not depend on any legislative grant.

APPEAL from the Fourteenth Judicial District Court, parish of Ouachita. *Ray,* J. Trial by jury.

*W. W. Farmer,* City Attorney, for plaintiff and appellee.

*Cobb & Gunby,* for defendant.

The opinion of the court was delivered by

HOWELL, J.   This is a suit to compel the defendant to remove a wooden building erected within what is known as the "fire district" in the city of Monroe.   The defendant excepted to the capacity of the mayor for want of the qualifications to hold said office and the right of the Governor to make the appointment of the mayor or the councilmen.

The right to an office, it is long since settled, can not be thus collaterally raised, and the judge *a quo* did not err in overruling the exceptions.

The answer presents a three-fold defense:

First—The mayor and trustees of the town of Monroe had no power, express or implied, to adopt ordinance No. 19, of October 6, 1870, creating the *fire district*, and said ordinance was null and produced no legal effect.

Second—The ordinance No. 56, adopted the third of January, 1872, by the mayor and council of the city of Monroe, suspending the effect of the above ordinance No. 19, did not give vitality or validity to the latter.

Third—If these propositions be unsound, the charter of Monroe, of May 4, 1871, does not confer the power to remove or destroy wooden buildings once erected in the fire district, without compensation, and the corporation could not compel its citizens to enter into a contract to take down the buildings on a certain day.

First—The plaintiffs consider that the town of Monroe was never empowered by express words to establish fire limits and to prevent the erection of wooden buildings therein; but they contend that this power is fairly implied in the powers expressly granted by the various acts of the Legislature incorporating the town, and that such power is necessary to the objects and purposes of such corporations.

By a clause in article 433, R. C. C., corporations may "enact statutes and regulations for their own government, provided such statutes and regulations be not contrary to the laws of the political society of which they are members."

By the various charters prior to that of May 4, 1871, the mayor and trustees of the town of Monroe were empowered to adopt all rules, ordinances, regulations, and by-laws for the general government, improvement, and police of the town, and prescribe the manner of enforcing them, not contrary to or inconsistent with the constitution and laws of this State and the United States.   See acts of 1855, p. 189, sec. seven; acts 1859, p. 215, sec. fifteen; acts 1866, p. 130, sec. nine.

It seems to us clear that where a municipal corporation is vested with such powers, and the compactness of its construction would increase the hazard of conflagration, the corporate authorities may fix what is known as a fire district and forbid the erection of wooden buildings

therein. No town or city, compactly built, can be said to be well-ordered or well-regulated which neglects precautions of this sort. It is its duty to the public to take such measures as may be practicable to lessen the hazard and danger of fire. The public good and safety are superior to the individual rights of the inhabitants, and under this principle such regulations are not the divestiture of the individual right of ownership and use, but is only conforming the use of individual property to the necessities, safety, and interests of the public. It is a regulation of its enjoyment.

A similar construction of the powers of such corporations has been adopted in some of our sister States. See 2 Yeates (Penn.), 493; 11 Mich. 425; 7 Cowen (N. Y.), 352; 3 Fairfield (12 Maine), 403.

We think the town of Monroe had authority to enact ordinance No. 19, of October 6, 1870, and hence the second proposition falls.

We may add, however, that the want of authority is not, under any correct rules of interpretation, so clear as to make the ordinance an absolute nullity and incapable of confirmation, and the ordinance No. 56, of the third of January, 1872, had such effect *if needed*.

Third—Does the charter of 1871 confer the power to remove wooden buildings after being erected within the fire district?

We think this a corollary of the first proposition. The power to prohibit includes the power to undo what is done in contravention of the prohibition. "A satisfactory and lawful regulation may otherwise be defeated and rendered ineffectual. The removal is made to prevent the hazard of the continuance of the combustible matter in a dangerous position, and not with the view to punish the wrong-doer or subject him to loss. If he thereby sustains a loss, it is the direct consequence of his unlawful act, of which he has no right to complain." 3 Fairfield, 403.

The objection that the mayor and city council could not, as is done in ordinance No. 56, give permission to build temporary wooden buildings and require their removal at a fixed date has no force.

If they had the power to prohibit entirely, they had the power to modify the prohibition. The greater includes the less. This is a matter of legislation and not of contract. The prohibition existing, they had the power to suspend it for a limited period for the benefit of the public. Those who built after the passage of said ordinance built with a knowledge of the condition imposed, and, it being a legitimate condition, they were bound by it.

We think the action is maintained.

Judgment affirmed.

## ON REHEARING.

The opinion of the court was delivered by

MARR, J. The exceptions filed by defendant in this case depend upon the solution of two questions: ·

First—Was George B. Hamlet mayor of the city of Monroe?

Second—Are the plaintiffs capable of standing in judgment in this suit?

First—J. L. Hunsicker, who was mayor of Monroe, died in July, 1873, and the Governor appointed and commissioned Hamlet to fill the vacancy. Defendant maintains that Hamlet was not mayor: First, because he was not a qualified voter of the city of Monroe; and, second, because the office was elective, and the act of incorporation required any vacancy occurring by death or resignation to be filled by election.

By the acts incorporating the town of Monroe—1855, 1859, 1866— the mayor and trustees were to be elected by the qualified voters of the town or corporation "*from among themselves;*" and by the act of 1871, by which Monroe was incorporated under the name of "the Mayor and City Council of Monroe," the mayor and councilmen were to be elected by the "*qualified voters of said corporation from among themselves,*" section two, page 237.

Hamlet registered as a voter in Tensas parish in September, 1872; but he testified that he had not registered in Ouachita parish. It is manifest, therefore, that he had not the requisite qualification; and that he could not have been legally elected mayor of the city of Monroe.

The several acts incorporating first the town and then the city of Monroe provided for the filling of any vacancy in the office of mayor, etc., by election. By the act of 1859, section twenty-five, page 219, "in case of the death or resignation of the mayor, a new election shall be ordered by the board of trustees within twenty days from such demise or resignation."

By the act of 1866, section five, pages 130 and 131, in case of a tie vote at the election, or of the death or resignation of the mayor or other municipal officer, the clerk of the district court or his deputy shall order an election, giving notice for ten entire days; and this mode of filling vacancies is embodied and re-enacted in the act of 1871, sections four and five, page 238.

The act of 1868, page twenty-seven, a general law, authorizes the Governor to fill vacancies in State, parish, and municipal offices. Of course this general law did not repeal the special law, the act of 1866, then in force; nor could it, in any manner, impair the act of 1871 incorporating the city of Monroe and providing specially for filling all vacancies in the municipal offices.

It is manifest that Hamlet was not lawfully mayor of Monroe, because he had not the requisite qualifications, and because the Governor had no power to appoint him mayor. This appointment was merely one of the long series of usurpations to which the people of Louisiana have been compelled to submit; and it was in flagrant violation of the express terms of the several statutes incorporating first the town and then the city of Monroe.

The Legislature saw fit, by act of 1874, page seventy-five, to amend section five of the act of 1871 so as to authorize the Governor to fill the vacancies which the act of 1871 required to be filled by election; but this act of 1874, of course, had no retroactive effect; and it could neither legalize nor excuse the unwarranted assumption of power by which the inhabitants of Monroe were deprived of their chartered right and franchise of electing their mayor; and were compelled to accept for that responsible office a colored adventurer from the State of Ohio, who, according to his own testimony, had been in the parish of Ouachita but five months and was less than twenty-three years of age at the date of his commission.

This question has been pressed upon us, and we have felt compelled to notice in some way the wrong to which the people of Monroe were subjected by this appointment in violation of the organic law of the city, the act of incorporation. But Hamlet was mayor in fact; no other person claimed the office; and his commission gave him a color of title. We think that the authority of one who assumes the powers and functions of an office, under a commission appointing him to that office, can not be questioned, judicially, otherwise than in a direct proceeding to oust him.

Second—The act of 1871, page 238, section eight, gave to "the mayor and city council of Monroe" perpetual succession, with authority to sue and be sued under the title of "the mayor and city council of Monroe." This suit was brought in the name of "the mayor and city council of Monroe," and the mayor and councilmen are mentioned by name, without necessity. This may be rejected as surplusage. It was the suit of the corporation by its corporate name; and it continues to be the suit of the corporation, without regard to any changes that may have since occurred in the *personnel* of the municipal officers.

Third—The answer of the defendant requires us to decide whether the corporation had the power to establish a fire district and to prohibit the erection of wooden buildings within that district.

On the sixth of October, 1870, the ordinance No. 19 was adopted, by which it was declared that none but fire-proof buildings should be erected within certain defined limits. At that time no express authority had been granted to the corporation to enact any such ordinance, and

it was not expressly granted until 1871. There has been great diversity of opinion as to the power of municipal corporations to restrict the right of property, by forbidding the owner to put up such buildings as he may choose, that is, of such materials as his taste or convenience may induce him to prefer; but we have no hesitation in saying that such regulations, applicable to cities and towns compactly built, fall within the police power of municipal corporations; and the maxim *sic utere tuo ut alienum non lædas* forbids the owner so to use his property as to imperil that of his neighbors, or to endanger their lives or their health. We think a municipal corporation might, without a special legislative grant of power to that effect, prohibit the erection of works and factories, and the pursuit of industries within the corporate limits, which would be injurious to the public health and destructive of the comfort of the inhabitants, by subjecting them, in the crowded streets, to nauseous smells and sickening odors; and the right to prohibit the erection of structures of wood and other combustible materials in the compactly-built parts of a city or town, by which the property of the other inhabitants would be subjected to constant risk of fire, falls within the same general police powers, and exists and must exist, *ex necessitate*, without special legislative authority.

By the act of 1871 the Legislature specially granted certain enumerated powers to the mayor and city council of Monroe, among others the power " to determine in what part of the city wooden buildings should not be allowed to be erected." P. 240, sec. nine.

On the thirty-first of December, 1871, a fire occurred by which the greater part of the business houses, the most valuable buildings in Monroe, were destroyed. On the third of January, 1872, the mayor and council met, and in accordance with the wishes of the inhabitants, as expressed at a mass-meeting of the day before, passed an ordinance, No. 56, by which the ordinance No. 19, of the sixth of October, 1870, was suspended as to its operation and effect until the first of November, 1873; and all persons desiring to erect temporary wooden buildings within the burnt district were permitted to do so; the buildings not to exceed the cost and value of one thousand dollars, the owners to give bond in the penal sum of five hundred dollars in favor of the mayor and city council to remove such buildings on or before the first of November, 1873.

We attach no importance to mass-meetings as a sanction or source of legislative power, whether State or municipal; but the action of the citizens and the proceedings of the municipal government may serve to show the popular opinion that the ordinance No. 19 was a proper and legitimate restriction of the right of property, which they did not desire to abrogate, but simply wished to have suspended in view of the neces-

sity of supplying by temporary structures the buildings destroyed by fire; and the ordinance No. 56 was, in effect, a re-enactment of ordinance No. 19, with a postponement of its operation until a fixed date at which it should be enforced.

On the twentieth of October, 1873, the mayor and city council passed an ordinance authorizing the removal by the police force of the temporary wooden structures thus erected in the burnt district, and also requiring the city attorney to bring suits to compel the removal. This ordinance also authorized the city attorney to grant a stay of execution until August, 1874, in favor of such persons as might confess judgment in these suits.

We think this was in every respect proper; and we do not appreciate the argument of defendant's counsel that this was a partial law and not uniform in its operation. All who might choose to confess judgment would have a stay of execution until August, 1874; and those who might choose to litigate, and to compel the corporation to establish its right and enforce its authority by suit, could not complain of the terms granted to those who confessed at once that right and authority.

Defendant was bound by the ordinance to remove his structure on or before the first of November, 1873. This suit was brought on the twenty-fourth of February, 1874, and by the suspensive appeal taken by the defendant he has prevented the execution of the judgment against him for nearly three years beyond the term granted to those who confessed judgment.

Defendant having refused to remove his wooden building, erected under ordinance No. 56, of the third of January, 1872, nothing was left to the corporation but to enforce the removal by suit, which was brought more than three months after the expiration of the delay granted by the ordinance.

The judgment of the court below was in favor of plaintiff and in accordance with the prayer of the petition; and it was affirmed by our predecessors. We concur in their conclusions, and shall not disturb their decree.

The judgment appealed from is therefore affirmed with costs.