JOSEPH O. KING *et al.*

*v.*

BAZZIL DAVENPORT, Exor.

*Filed at Springfield March 21, 1881.*

1. POLICE REGULATIONS *in cities—power to prevent the erection and repair of buildings of combustible materials.* The delegation of legislative power to a city to prohibit the erection, placing or repairing of wooden buildings within limits prescribed by ordinance, without permission, and to direct and prescribe that all buildings within the limits prescribed shall be made or constructed of fire proof materials, and generally to define and declare what shall be nuisances, and to authorize and direct the summary abatement thereof, etc., is within the competency of legislative power, and authorizes the passage of an ordinance prohibiting the erection, or repairing of any building within the fire limits, with combustible materials, and providing for the summary abatement or removal of the same.

2. SAME—*what may be interdicted in populous towns or cities.* Unwholesome trades, slaughter houses, operations offensive to the senses, the deposit of powder, the application of steam power to propel cars, the building with combustible materials, and the burial of the dead, may be prohibited in the midst of dense masses of population, on the general principle that every person ought so to use his property as not to injure his neighbor, and that private rights must be subservient to the general interests of the community.

3. An ordinance of a city passed in pursuance of legislative authority, establishing fire limits, and declaring a wooden roof put on a building thereafter within the fire limits, to be a nuisance, and requiring the city marshal, under an order from the mayor, to remove the same, is a reasonable exercise of the police power of the State, and has the force and effect of a statute, when set up in justification by the marshal in removing such a roof.

4. SAME—*summary abatement without previous trial by jury.* As the summary abatement of nuisances is a remedy which has ever existed in the

law, its exercise can not be regarded as in conflict with constitutional provisions for the protection of the rights of private property, and giving a trial by jury. Formal legal proceedings and trial by jury are not appropriate, and have never been used in such cases.

5. The law making power is the sole judge whether the necessity exists for the summary abatement of public nuisances, and when, if at all, it will exercise the right to enact such laws, but the enactment must be a reasonable police regulation, made in good faith for the public good.

6. ORDINANCE—*construed as to the abatement of a nuisance.* Where an ordinance of a city declares the erection, enlargement or repairing of a wooden building with materials not fire-proof, a nuisance, and directs the city marshal to "remove or tear down such building, or such part thereof as may be necessary," and a building is repaired in violation of its terms, by putting on a new roof of wooden and combustible materials, it will be held to authorize the removal of the whole roof thus put on the building.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. BROWN, KIRBY & RUSSELL, and Mr. C. H. DUMMER, for the appellants:

1. While as a general rule a municipal corporation can not by ordinance declare a forfeiture of property without due process of law, in which the right of trial by jury is allowed, yet it may declare such a forfeiture, if authorized by the legislature, and it is a reasonable exercise of the police power of the State.

The establishment of limits within the denser portions of cities and villages, within which buildings constructed of inflammable materials shall not be erected or repaired, may also, in some cases, be equivalent to destruction of private property; but regulations for this purpose have been sustained, notwithstanding this result. Cooley's Cons. Lim., p. 594; *Respublica* v. *Duguet,* 2 Yeates, 493; *Wadleigh* v. *Gilman,* 3 Fairfield, 403; *Brady* v. *N. W. Ins. Co.* 11 Mich. 425; *Hart* v. *The Mayor, etc., of Albany,* 9 Wendell, 571; 2 Kent's Com. 340; *Thorp* v. *Rutland & Burlington Ry. Co.,*

27 Verm. 149; 3 Blackstone's Com. 6; *Slaughter House Cases*, 16 Wall. 36; 3 Black, 5.

2. It is not a valid objection that the Jacksonville ordinance provided a penalty for its violation, and that the city is therefore precluded from resorting to the remedy of removal. 9 Wend. 539.

As to the right to prescribe reasonable police regulations, see *T. W. & W. Ry. Co.* v. *City of Jacksonville*, 67 Ill. 40; *Baker* v. *Boston*, 12 Pick. 193; *Austin* v. *Murray*, 16 id. 126; *Vanderbilt* v. *Adams*, 7 Cow. 349; *Stuyvesant* v. *Mayor of New York*, 7 Cow. 588.

The party injured by such regulations is presumed to be compensated by sharing in their advantages. *Dore* v. *Gray*, 2 T. R. 358; *Governor, etc.* v. *Meredith*, 4 id. 794.

Messrs. MORRISON, WHITLOCK & LIPPINCOTT, for the appellee:

1. If the ordinance is to be construed as authorizing the officers of the city to determine whether and when a reasonable notice to remove has been given, and thereupon remove such building, without first having a judicial determination as to whether such building has been raised or repaired, then it is void, because the charter does not authorize its passage. To create such a tribunal the power must be expressly given. *Kirk* v. *Norville*, 1 T. R. 124; Wood on Nuisances, 770; *City of Salem* v. *Boston R. R. Co.*, 98 Mass. 481.

All the powers not expressly granted by the charter, or necessary to carry out its powers are treated as denied; nothing is taken by implication. *Leavenworth* v. *Norton*, 1 Kan. 432; *Webster* v. *Harwentin*, 32 Conn. 131; *Atley* v. *Edgercomb*, 53 Me. 447; *Harper* v. *Rany*, 14 id. 375; *Kirk* v. *Norville, supra.*

There is no grant in this charter to the city giving the power to pass an ordinance directing a ministerial officer of the city to decide for himself when he shall enter upon the premises of the citizen and destroy or damage it, and such a

power would be judicial in its nature. *City of Salem* v. *Boston R. R. Co.* 98 Mass. 481.

Such a power can not be sanctioned unless conferred in express terms. *Chicago* v. *Laflin*, 49 Ill. 177; *Yates* v. *Milwaukee*, 10 Wall. 497.

2. The ordinance was unconstitutional and void, in not providing any mode of ascertaining the existence of the alleged fact on which is based the right to remove, abate, or destroy the property of the citizen. *Yates* v. *Milwaukee*, 10 Wall. 497; *Winfield* v. *People*, 14 Mich. 41; *Everts* v. *Council Bluffs*, 46 Iowa, 46; *Babcock* v. *City of Buffalo*, 56 N. Y. 262; *Chicago* v. *Laflin*, 49 Ill. 177; *Underwood* v. *Green*, 42 N. Y. 142; Wood on Nuisances, 773.

A city must exercise these police powers in a reasonable manner and not arbitrarily. Wood on Nuisances, 776; *T. W. & W. R. R. Co.* v. *Jacksonville*, 67 Ill. 37; *Lake View* v. *Rose Hill Cemetery*, 70 id. 191.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The city of Jacksonville, in this State, having power, by ordinance, to establish fire limits and to declare the building or repairing of buildings with combustible materials within the fire limits a nuisance, its city council did, by ordinance, establish fire limits, and enacted that any building built or repaired with other than fire-proof material, or any roof or gutter placed on any building, the outer surface of which was made with materials other than fire-proof, if within the fire limits, and done without permission, should be deemed a nuisance, and that if the offender, upon reasonable notice, failed to remove such wooden building, or wooden part of such building, the city marshal, upon the written direction of the mayor, should "remove or tear down such building, or such part thereof as may be necessary." The ordinance further provided, that the offender should be subject to a fine of $100 for each week he failed to remove such wooden build-

ing, or wooden part thereof, and that if the city caused the removal, the expense of the removal might be recovered of the offender. The plaintiff's testatrix violated this ordinance by taking off an old and out of repair shingle roof from her building, situated within the fire limits, and putting thereon, without permission, a new shingle roof. She failing to remove the same upon due notice, the roof was removed by the city marshal, in conformity with the ordinance.

She brought this suit of trespass against the mayor and marshal of the city for the removing of the roof, and dying since the bringing of the suit, her executor was substituted as plaintiff. The defendants justified under the ordinance, and on trial by the court, without a jury, judgment was rendered against them for $175, which, on appeal to the Appellate Court for the Third District, was affirmed, and then the present appeal taken, the proper certificate having been made to authorize it.

The sole question here presented is upon the validity of the ordinance.

By its charter the following legislative power is delegated to the city of Jacksonville:

"The city council, for the purpose of guarding against the calamities of fire, shall have power to prohibit the erection, placing or repairing of wooden buildings within the limits prescribed by them, without their permission, and direct and prescribe that all buildings within the limits prescribed shall be made or constructed of fire-proof materials, and to prohibit the rebuilding of wooden buildings; to declare all dilapidated buildings to be nuisances, and to direct the same to be removed, repaired or abated, in such manner as they shall prescribe and direct; to declare all wooden buildings which they may deem dangerous to contiguous buildings, or in causing or promoting fires, to be nuisances, and to require and cause the same to be removed or abated in such manner as they shall prescribe.

"And, generally, to establish such regulations for the prevention and extinguishment of fires as the city council may deem expedient.

"The city council shall have power to pass, publish, and repeal all ordinances, rules and police regulations, not contrary to the constitution and laws of the United States and of this State, * * * or proper to carry into effect the powers vested by this act in the corporation; to determine what shall be a nuisance and provide for the punishment, removal and abatement of the same; and also to punish violations of its ordinances by fines, penalties and imprisonment," etc.

"To define and declare what shall be nuisances, and authorize and direct the summary abatement thereof."

There is here given ample authority, we think, for the passage of the ordinance in question.

The inquiry then must be, whether the enactment of such a law is within the competency of legislative power. Unwholesome trades, slaughter-houses, operations offensive to the senses, the deposit of powder, the application of steam power to propel cars, the building with combustible materials, and the burial of the dead, may all, says Chancellor KENT, be interdicted by law in the midst of dense masses of population, on the general and rational principle that every person ought so to use his property as not to injure his neighbors, and that private interests must be made subservient to the general interests of the community. 2 Kent Com. 340. The right to restrain owners of land in towns from erecting wooden buildings, except under certain restrictions, has never been doubted, or if it has been, the doubt has long since been removed. *Commonwealth* v. *Tewksbury*, 11 Metc. 58. Such regulation is but "a just restraint of an injurious use of property, which the legislature have authority to make." Id. 59. But the particular respect in which the ordinance is assailed, is, that it authorizes the abatement of the nuisance summa-

rily, without any prior adjudication of the right to exercise the power.

The summary abatement of nuisances is a remedy which has ever existed in the law, and its exercise is not regarded as in conflict with constitutional provisions for the protection of the rights of private property. Blackstone, in his classification of remedies by the act of a party, says, " the fourth species of remedy by the mere act of the party injured, is the abatement or removal of nuisances,"—3 Black. Com. 5,—and that " the reason why the law allows this private and summary method of doing one's self justice is because injuries of this kind, which obstruct or annoy, such things as are of daily convenience for use, require an immediate remedy, and can not wait the slow progress of the ordinary forms of justice."

*Hart* v. *Mayor, etc. of Albany,* 9 Wend. 571, was the case of an injunction to restrain the city authorities from removing a boat or ark, which Hart had built in the basin at Albany, which the authorities were proceeding to remove under the city ordinance. The power to do the act by the city authorities (which the court affirmed) was placed by Justice SUTHERLAND, in his opinion, upon the ground that the act of Hart was an unauthorized obstruction in the basin. at Albany. After holding the ordinance invalid, for reasons that do not apply here, he said: " But the real question in this case is not whether the ordinance in question, considered as a legislative act, is valid, but whether the corporation had power, upon any principle whatever, to do the act which the ordinance authorized to be done. If this is a case in which the corporation, or any other person, had a right summarily to remove or abate this obstruction, then the objection that the appellants, by this course of proceeding, may be deprived of their property without due process of law or trial by jury, has no application. Formal legal proceedings and trial by jury are not appropriate to, and have never been used in such cases."

Senator Edmunds, in his opinion, says: "Much stress was laid by the counsel upon the fact that the exercise of the right claimed by the respondents would result in the destruction of their property without the benefit of a trial by jury, and that consequently, the ordinance in question was a violation of the constitution, and the bill of rights. The same objection would apply to the dejection of every nuisance, yet nothing is clearer or better settled than the right to exercise this power in a summary manner, not only where the whole community is affected, but where a private individual alone is injured. This is a right necessary to the good order of society," etc.

The case of *Baker* v. *Boston*, 12 Pick. 193, respected an ordinance providing for filling up a creek for sanitary purposes, and action thereunder, for filling up the creek, as being an injury to private property. The court sustained the action of the city, and say: "Police regulations, to direct the use of private property so as to prevent its proving pernicious to the citizens at large, are not void, although they may, in some measure, interfere with private rights without providing for compensation. This principle was settled in the cases of *Vanderbilt* v. *Adams*, 7 Cow. 349, and *Stuyvesant* v. *The Mayor of New York*, 7 Cow. 588. And the counsel for the failing party in the latter case admitted that the principle was too clear to be questioned. 'The contrary doctrine,' says the court in the same case, 'would strike at the root of all police regulations.' The order of the mayor and aldermen stands on the same footing as quarantine and fire regulations ; and if by such regulation an individual receives some damage, it is considered as *damnum absque injuria.* The law presumes he is compensated by sharing in the advantages from such beneficial regulations. *Dore* v. *Gray,* 2 T. R. 358 ; *Governor, etc.* v. *Meredith* 4 id. 794."

The case of *Wadleigh* v. *Gilman et al.* 3 Fairfield, 403, is one directly in point in support of the present defence.

The plaintiff there, in violation of the city ordinance, had removed a building built of combustible materials from one point within the fire limits to another point within such limits. The building was taken by the city authorities, without resorting to judicial process, and the owner brought his action of trespass. The defendants, the street commissioner and the city marshal, justified under the ordinance. The court held that, under its charter, by implication, the city was authorized to make all "necessary police regulations;" that the ordinance was a discreet exercise of the police power, and was a full justification of the acts of the defendants. The court say that "police regulations may forbid such a use, and such modifications of private property as would prove injurious to the citizens generally." "Laws of this character are unquestionably within the scope of the legislative power, without impairing any constitutional provisions."

Judge Cooley, in his work on Constitutional Limitations (4th ed.) 748, concludes a discussion of the subject with the following statement: "And, generally, it may be said that each State has complete authority to provide for the abatement of nuisances, whether they exist by the fault of individuals or not, and even though in their origin they may have been permitted or licensed by law. And see *Wattertown* v. *Mayo*, 109 Mass. 315.

In *Blair* v. *Forehand*, 100 Mass. 136, and *Morey* v. *Brown*, 42 N. H. 373, it was held not unconstitutional to authorize the destruction of dogs, without previous adjudication, when found at large without being collared according to the statutory regulation. In the former of which cases it was said: "In the exercise of this (police) power, the legislature may not only provide that certain kinds of property (either absolutely, or when held in such a manner or under such circumstances as to be injurious, dangerous or noxious), may be seized and confiscated upon legal process after notice and hearing; but may also, when necessary to insure the public

safety, authorize them to be summarily destroyed by the municipal authorities without previous notice to the owner—as in the familiar cases of pulling down buildings to prevent the spreading of a conflagration or the impending fall of the buildings themselves, throwing overboard decaying or infected food, or abating other nuisances dangerous to health."

In *Murray's Lessee* v. *Hoboken Land Co.* 18 How. 272, it was held that a distress warrant issued by the solicitor of the treasury under the act of Congress of May 15, 1820, against a collector of customs for an indebtedness due to the government, was not inconsistent with the constitution of the United States in the respect that it prohibits a citizen from being deprived of his liberty or property without due process of law, as summary process of distress for the recovery of debts due to the government was a well known extrajudicial remedy of the common law. For like reason, the supporting of this ancient extrajudicial remedy of the abatement of a public nuisance is not inconsistent with the similar provision in our own State constitution.

In *Toledo, Wabash and Western Railway Co.* v. *City of Jacksonville*, 67 Ill. 40, we said: "What are reasonable regulations, and what are subjects of police powers, must necessarily be judicial questions. The law-making power is the sole judge when the necessity exists, and when, if at all, it will exercise the right to enact such laws." It was said, however, that such regulations must be what they purport to be, police regulations, and must be reasonable. In *Austin* v. *Murray*, 12 Pick. 126, the court assumed to determine what was a reasonable police regulation, and that the regulation there in question was not a police regulation, made in good faith as such.

There can be no doubt, it seems to us, that the ordinance in question was a police regulation, proper, and made in good faith, " for the purpose of guarding against the calamities of fire," in a populous neighborhood; and we must regard it as an entirely reasonable regulation. There is no more frequent

or admittedly proper exercise of the police power, than that of the prohibition of the erection of buildings of combustible materials in the populous part of a town, and the only means of making such prohibition effectual is by summary abatement. Every moment's delay in the removal of the nuisance is constant exposure to danger. Before any judicial inquiry and hearing could be had in the matter, the whole evil sought to be guarded against might be produced.

The imposition of a penalty would but punish the offender, it would not remove the source of danger. This latter is the thing which the necessity of the case requires, and immediate abatement is the only competent remedy. It is admitted by appellee's counsel, an admission they are compelled to make under the law, that if this erection were a nuisance at common law the city authorities might abate it. But what is a nuisance at common law? Blackstone's definition is, whatsoever unlawfully annoys or doth damage to another, is a nuisance. The construction of this wooden roof was an unlawful thing, made so by ordinance prohibiting its construction. That it was, in its nature, injurious, and a source of constant danger in a populous place, experience and the general prevalence of this sort of legislation we are considering, teach us. Such was the view of the legislature in the matter, that by the charter of this city, for the purpose of guarding against the calamities of fire, they authorized the city council to prohibit the erection or repairing of wooden buildings within the fire limits they might prescribe, and to declare such buildings to be nuisances, and cause the same to be abated as they should direct.

In pursuance of such authority, the city council established fire limits, and by ordinance declared any such roof as the one in question, which should be put upon a building within such limits, to be a nuisance, and required the city marshal, under an order from the mayor, to remove the same.

Such an ordinance, enacted in pursuance of legislative authority, has the force of a statute, and may be viewed as though such, in the treatment of the present subject. We have here, then, what is a nuisance in fact, that which is declared to be such by ordinance—determined by law to be a nuisance—and why may not the remedy by abatement, under the ordinance, belong to it as well as in the case of any nuisance at the common law? The reason for it is equally strong. As before said, there is no other competent remedy to meet the necessity of the case.

Further, the charter authorizes the provision for summary abatement, and the ordinance consequently gives it. How is a nuisance to be abated by the city except by a summary proceeding? The term itself imports such a proceeding. This case is quite different from *Yates* v. *Milwaukee,* 10 Wall. 497, cited by appellee's counsel, where the court held that the mere declaration of the city council could not make an existing structure a nuisance unless it had in fact that character, and that it was not allowable "that a municipal corporation, without any general laws, either of the city or of the State, within which a given structure can be shown to be a nuisance, can, by its mere declaration that it is one, subject it to removal by any person supposed to be aggrieved, or even by the city itself." The thing here, we regard, had the character of a nuisance. It was constructed in the face of a general ordinance of the city, long before passed, prohibiting any such structure, and declaring it to be a nuisance and subject to be abated as such. It was a reasonable regulation for the future, and plaintiff's defiant disobedience of it leaves her no reason for complaint of the declared consequences.

Exception is taken to the particular wording of the ordinance, in the respect that the city marshal shall "remove or tear down such building, or such part thereof as may be necessary." It is asked, who shall determine what part is necessary? The ordinance had before declared the erection, repairing or enlargement of such a building a nuisance, and

the words, "or such part thereof as may be necessary," evidently refer to the repairing or enlargement of the building; that such part of the building as had been repaired or enlarged might be torn down; that is, such part of it as was necessary to remove the enlarged or repaired portion. If we may imagine some case of a repair where it might be difficult to determine what part should be torn down as being necessary, there could be none such here, where the repair was a distinct, separate and entire thing—the putting on the roof of a building. As applied to the present case, there can be no doubt that the ordinance authorized the removal of the whole roof that had been put on.

We do not, then, find the provision of the city charter authorizing the city council to declare the structure in question a nuisance, and to abate it summarily, to be in conflict with the constitution, and therefore hold the ordinance to be valid, and that it was a justification of the acts of the defendants in the removal of the roof.

The judgment of the Appellate Court is reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Judgment reversed.*

WALKER, J.: I am unable to concur in either the reasoning or conclusion announced in this opinion.