The First National Bank of Mt. Vernon *et al. v.* Sarlls *et al.*

No. 14,999.

THE FIRST NATIONAL BANK OF MT. VERNON ET AL.
*v.* SARLLS ET AL.

INJUNCTION.—*Prevention of Erection of Building.— When Action will Lie.— Municipal Ordinance.*—Where it is shown that the erection of a building, if permitted, will be in express violation of a valid municipal ordinance, although it would not be a nuisance *per se,* an individual who shows such fact, and shows in addition that its erection will work special and irreparable injury to him and his property, is entitled to relief by injunction.

SAME.—*Parties to Action.— Who May be Joined as Plaintiff.*—Although the plaintiffs, in such an action, are shown to be the owners of separate and distinct tenements, and thus are not united in interest with each other, yet there is one object of common interest among all of them. They all claim one general right to be relieved from that which they insist is a nuisance, and which alike affects all of them.   Their common danger and interest in the relief sought authorize them to join in the action.

MUNICIPAL CORPORATION.—*Police Powers.— Ordinance.—Protecting Against Fire*—Cities in this State possess ample power to enact and enforce reasonable ordinances to secure protection against fire.   In the absence of express statutory authority, the enactment and enforcement of reasonable regulations of this character are recognized as a legitimate exercise of the police power necessary to the safety of the city.   In addition to the power thus possessed, the statutes of this State confer express authority upon cities to establish fire limits, and prevent the erection of wooden buildings in such parts of the city as the common council may determine.   The statutory power thus conferred is not a limitation upon the common law power of the city in this particular.

| | |
|---|---|
| 129 | 201 |
| 130 | 155 |
| 129 | 201 |
| 131 | 283 |
| 131 | 379 |
| 132 | 581 |
| 129 | 201 |
| 138 | 346 |
| 129 | 201 |
| 146 | 618 |
| 129 | 201 |
| 148 | 89 |
| 129 | 201 |
| 158 | 213 |
| 129 | 201 |
| 159 | 78 |
| 129 | 201 |
| 160 | 59 |

SAME.—*Repairs of Building.*—*Public Safety.*—*Removal of Building.*—*Power of Municipality to Compel.*—*Nuisance.*—If the owner of a building proposes to make repairs or additions to it of such material or in such manner as to clearly menace the public safety or to greatly endanger adjacent property, the city authorities have ample power to interfere and prevent the making of such repairs or addition. They may also remove, or compel the removal of, wooden buildings erected in violation of a valid ordinance; not necessarily because the buildings thus erected are a nuisance, but because their erection was in violation and defiance of the law.

SAME.—*Deprivation of Power to Make Repairs.*—*Ordinance.*—*Invalidity of.*— A municipal ordinance is invalid which arbitrarily attempts to take from the owner of a frame or wooden building all power to make repairs necessary for its preservation, or necessary for its enjoyment, regardless of the effect which such repairs may have upon the public, upon adjacent property, or upon the rights of others; and applies with equal force to buildings detached and remote from all others as to those in immediate proximity to others; and not only to repairs which would tend to create danger, but also to those which would serve to remove or diminish it.

From the Posey Circuit Court.

*E. M. Spencer* and *W. P. Edson,* for appellants.

*G. V. Menzies* and *W. S. Jackson,* for appellees.

McBRIDE, J.—This case involves the validity of the second section of an ordinance of the city of Mt. Vernon, entitled " An ordinance concerning the prevention of fires."

The first section, the validity of which is not called in question, establishes fire limits, and prescribes the material which may be used in the erection of buildings within these limits. The second section is as follows :

" Section 2. It shall be unlawful for any person to alter, repair, or rebuild any frame or wooden building situated within the limits defined and described by this ordinance, whenever the amount required to alter, repair, or rebuild shall equal or exceed the sum of three hundred dollars.

" Any person violating the provisions of this section may be fined in any sum not less than two dollars, nor more than one hundred dollars, with costs ; and each day that work-

men are employed on such building shall constitute a distinct offence."

The complaint charges, in substance, that the appellees were the owners of certain real estate in Mt. Vernon, and within the fire limits prescribed by the ordinance in question, upon which they were threatening to, and had commenced to rebuild and repair certain frame buildings, at a cost exceeding $300, which had previously been partially destroyed by fire. The appellants (plaintiffs below) are shown to be each the owners of certain other tracts of land, either adjacent to, or in the immediate vicinity of, the appellees' building, on which valuable buildings have been erected; and they charge that, by reason of the threatened repairing and rebuilding by the appellees, the danger of the destruction by fire of their respective buildings is "greatly increased, and made more imminent, thereby diminishing the value of said plaintiffs' real estate, and increasing the rate of fire insurance thereon, to the irreparable injury and damage of the said buildings on each and all of the said pieces of real estate so, as aforesaid, owned by the plaintiffs, and is an obstruction to the free use, by the plaintiffs of their said property, and interferes with the comfortable enjoyment thereof," etc. Prayer for an injunction.

The circuit court sustained a demurrer to the complaint, and rendered judgment for costs in favor of the appellees.

Three questions are presented and discussed:

1st. Will injunction lie in such a case?

2d. If so, is there a misjoinder of parties plaintiff?

3d. Is the section of ordinance in question valid?

As a rule, a court of equity will not, at the suit of a city, restrain by injunction the threatened violation of an ordinance of such city regulating the erection of buildings for the purpose of greater security against damage by fire. 15 Am. & Eng. Encyc. of Law, 1172; *Village of St. Johns* v. *McFarlan,* 33 Mich. 72 (20 Am. Rep. 671); *President, etc.,* v. *Moore,* 34 Wis. 450 (17 Am. Rep. 446); *Mayor, etc.,* **v.**

*Thorne*, 7 Paige, 261 ; *City of Manchester* v. *Smyth*, (N. H.) 10 Atl. Rep. 700.

Nor will the courts thus interfere, at the suit of an individual, when such interference is sought solely for the enforcement of the ordinance, and not because of special damage threatening the party asking such interference.

Some of the authorities above cited affirm that to warrant the application of the restraining power to prevent the erection of buildings in violation of a city ordinance, the act sought to be restrained must be a nuisance in fact, and not one created solely by statutory enactment, or municipal ordinance.

We can see no good reason for the distinction. Where it is shown that the erection of a building, if permitted, will be in express violation of a valid municipal ordinance, although it would not be a nuisance *per se*, an individual who shows such fact, and shows in addition that its erection will work special and irreparable injury to him and to his property, is entitled to relief by injunction.

It is only where the injury is general, and public in its effects, and no private right is violated, in contradistinction to the rights of the rest of the public, that individuals are precluded from bringing private suits for the violation of their individual rights. *Blanc* v. *Murray*, 36 La. Ann. 162 (51 Am. Rep. 7) ; Wood Nuis., section 645 *et seq. ; McCloskey* v. *Kreling*, 76 Cal. 511 ; 23 Am. & Eng. Corp. Cases, 151 ; *Horstman* v. *Young*, 13 Phila. 19 ; *Rand* v. *Wilber*, 19 Ill. App. 395; *Mayor, etc.,* v. *Hoffman*, 29 La. Ann. 651 (29 Am. Rep. 345).

In the case at bar it is charged by the averments in the complaint that the threatened act will be in violation of a municipal ordinance, and that it will work special and irreparable injury to the property of the petitioners. They have the right to maintain the action.

There is no misjoinder of parties plaintiff. While the appellants are shown to be the owners of separate and dis-

tinct tenements, and thus are not united in interest with each other, there *is* one object of common interest among all of them.

They all claim one general right to be relieved from that which they insist is a nuisance, and which alike affects all of them. Their common danger and common interest in the relief sought authorize them to join in the action. *Tate* v. *Ohio, etc., R. R. Co.*, 10 Ind. 174, and authorities there cited ; *Town of Sullivan* v. *Phillips*, 110 Ind. 320.

The question as to the validity of the ordinance presents much greater difficulty.

There can be no doubt that in this State cities possess ample power to enact and enforce reasonable ordinances to secure protection against fire. In the absence of express statutory authority, the enactment and enforcement of reasonable regulations of this character are recognized as a legitimate exercise of the police power necessary to the safety of the city. *Baumgartner* v. *Hasty*, 100 Ind. 575 ; *Hasty* v. *City of Huntington*, 105 Ind. 540 ; *Clark* v. *City of South Bend*, 85 Ind. 276, and authorities cited in each; also, *Mayor, etc.*, v. *Hoffman, supra ; King* v. *Davenport*, 98 Ill. 305 ; *Wadleigh* v. *Gilman*, 12 Maine, 403 (28 Am. Dec. 188) ; *City of Salem* v. *Maynes*, 123 Mass. 372 ; *City of Troy* v. *Winters*, 4 Thomp. & C. (N. Y.) 256 ; *McKibben* v. *Fort Smith*, 35 Ark. 352 ; *Klingler* v. *Bickel*, 117 Pa. St. 326.

In addition to the power thus possessed, clause 32, of section 3106, R. S. 1881, enumerating the powers conferred upon cities, confers express authority to establish fire limits and prevent the erection of wooden buildings in such parts of the city as the common council may determine. The statutory authority is still further extended by clause 5 of the same section, and by section 3155, known as the " General Welfare " clause.

Counsel for the appellee, insist, however, that the enactment of the statutes in question served as a limitation upon the power of the city ; that the powers therein enumerated,

and more, belonged to the city at common law, and that by the statutory enumeration of certain specific powers, all others not thus enumerated are excluded. *Expressio unius est exclusio alterius* has no application. The statute, in so far as it enumerates common law powers previously possessed by the municipality, is merely declaratory of the common law. But while it is no doubt competent for the Legislature, in creating such corporations, to deprive them of all common law police power and enact that they shall possess and exercise such only as are conferred by statute, such intention of the Legislature will not be inferred simply because some of the common law powers are enumerated, while no mention is made of others.

In the exercise of these powers, they may not only prescribe where wooden buildings may, and where they may not, be erected, but they may undoubtedly exercise a reasonable control over the making of repairs on all buildings, whether of wood or not, and may prevent the use of inflammable or otherwise dangerous material in making such repairs.

It can hardly be doubted that if the owner of a building proposed to make repairs or additions to it of such material or in such manner as to seriously menace the public safety, or to greatly endanger adjacent property, the city authorities have ample power to interfere and prevent the making of such repairs or additions. *City Council, etc.,* v. *Louisville, etc., R. R. Co.,* 84 Ala. 127; *King* v. *Davenport, supra.*

They also have full power to abate nuisances, and may, if necessary, remove or compel the removal of buildings which have for any cause become nuisances, by getting in such condition that they greatly endanger the public health or safety, or the safety of adjacent property, provided the danger inheres in the building, and not simply in the use to which the building is put.

Here, also, although the statute gives ample authority, they have, without statutory authority, ample power at com-

mon law to cause the abatement of the nuisance; and, if it can not be otherwise abated, they may destroy the thing which constitutes or creates it. *Baumgartner* v. *Hasty, supra,* and authorities cited.

They may also remove, or compel the removal of, wooden buildings erected in violation of a valid ordinance; not necessarily because the building thus erected is a nuisance, but because its erection was in violation and defiance of the law, and its owner can not complain when the law is vindicated by its removal. If it were possible to so prepare wood that it would be absolutely non-inflammable, and that a building erected of it would be fire-proof, and safer than one erected in the ordinary way of stone or brick, a building thus erected of wood, in violation of a valid ordinance enacted under clause 32, of section 3106, *supra,* forbidding such erection, would be as much subject to removal, or destruction by the authorities as if it were constructed of wood not thus prepared.

It is manifest, therefore, that the right to remove or destroy the building thus erected in violation of an ordinance does not grow out of the fact that it is a nuisance, as a building made out of such material, if otherwise skilfully and properly constructed would be as safe, or safer, than one built in the ordinary way, of stone and brick, and could not be a nuisance. As is said in *Baumgartner* v. *Hasty, supra:* "A municipal corporation has no power to treat a thing as a nuisance which can not be one." See, also, Wood Nuisances, 823; *Yates* v. *Milwaukee,* 10 Wall. 497; *Matter of Jacobs,* 98 N. Y. 98 (50 Am. Rep. 636).

The power in such case to compel the removal of the building grows solely out of the fact that its erection was in violation of the ordinance.

The discovery of a process by which wood could be made non-inflammable, and in all respects as safe to be used in the construction of buildings as stone, or brick, or iron, would end the common law power of the city to prohibit the

erection of wooden buildings, or its power under the general welfare clause, while under the statute that power would still exist, simply because the material was wood, and not at all because it was dangerous.

So with the power to remove buildings already erected. There is no express legislation on the subject, and such powers as the city has are its common law powers, reinforced by the general welfare clause of the statute.

As above shown, a building erected in violation of a valid ordinance may be removed without reference to its character; but with this exception, cities can only condemn as nuisances, and compel the removal of buildings which are in themselves, for some reason, dangerous or hurtful.

The author of a valuable work on the law of nuisances states the law as follows: "Nor does the power to abate nuisances warrant the destruction of valuable property which was lawfully erected, or anything which was erected by lawful authority. It would, indeed, be a dangerous power to repose in municipal corporations to permit them to declare by ordinance or otherwise anything a nuisance, which the caprice or interest of those having control of its government might see fit to outlaw, without being responsible for all the consequences, and, even if such power is expressly given by the Legislature, it is utterly inoperative and void, unless the thing is in fact a nuisance, or was created or erected after the passage of the ordinance, and in defiance of it." Wood Nuis. 823. See, also, the opinion by Justice MILLER, in *Yates* v. *Milwaukee, supra.*

This may serve to indicate the scope of the common law powers of the city in this direction. and the additional powers given by the statute.

At common law they are only authorized to interfere with the erection or repair of buildings far enough to prevent the doing of that which from its nature would have a tendency to create or enhance danger.

There is in this State no statute purporting to give to

cities any power to prevent the repair of wooden buildings. If they have such power it is derived either from the general welfare clause, or it is an incident of their common law police power. The section of the ordinance in question, if valid, absolutely prohibits the altering or repairing of all frame or wooden buildings within the fire limits in all cases where the cost of altering or repairing will equal or exceed three hundred dollars. It makes no difference what material is to be used in making the repairs, or what the effect may be on the building. Repairing with fire-proof material is equally prohibited with repairs from dangerous and inflammable material. A repair which would tend to diminish danger falls under the ban equally with those the tendency of which would inevitably increase it.

It makes no difference whether the building was erected before or after the establishment of fire limits, or what its value is. Its value may be trifling. It may be a mere wreck or remnant, which $300 would practically rebuild, or it may be valuable, worth many thousands of dollars, and the cost of the repairs, although $300 or more, relatively insignificant. It may also be that no other building is near it to be affected or endangered.

As we have heretofore said, we do not doubt that cities may exercise a reasonable control over the making of repairs to buildings, and may prevent alterations and repairs which would create nuisances. This they can do even in the absence of statutory authority, in the exercise of the police power. And where fire limits are established they may doubtless prevent the repair of a wooden building within such limits, when to repair would practically be to rebuild, whether such repairs would create a nuisance or not. They can not, however, at least without express statutory authority, enforce a general, sweeping prohibition of all repairs. Whether a statute attempting to confer such power would be constitutional we need not, of course, decide in this case,

but a consideration of some of the possible effects of such an ordinance may well suggest a query of that character.

To repair a building means simply to restore it to a sound condition. The natural and probable effect of repairing, if carefully done, would be to diminish danger, instead of to increase it. Certainly a building so much injured or otherwise out of repair as to require $300 to repair it is more likely to endanger the public and surrounding property than if put in proper repair.

If it is lawful to maintain it without repairs, how can the police power afford any justification for a refusal to allow its owner to remedy the effects of accident or decay and restore it to a sound condition ?

To hold that this was a proper exercise of the police power would be to pervert entirely the use of that power which is designed to protect society and prevent the doing of things inimical to its well-being.

Such an ordinance might in many cases compel the owner of valuable property to stand by and allow it to become valueless, and a nuisance, without the power to prevent it. The accidental destruction or removal of a roof, which it would cost $300 to replace, might thus reduce valuable property to the condition of a mere heap of material. It is not simply a restraint on a noxious or improper use of property by its owner, but prohibits him doing that which alone will in many cases save his property from becoming a noxious and dangerous thing. Instead of restraining him from so using it as to make it pernicious to his neighbors, it would compel him by inaction to allow it to become and remain so. It might unquestionably, in many cases, amount to a taking of the property of the citizen without due process of law, and without the sanction of that overriding necessity by virtue of which at times the right of the individual may be sacrificed for the public good.

In *Matter of Jacobs*, 98 N. Y. 98 (50 Am. Rep. 636), Justice EARL, speaking for the court, says : " The consti-

tutional guaranty that no person shall be deprived of his property without due process of law may be violated without the physical taking of property for public or private use. Property may be destroyed, or its value may be annihilated ; it is owned and kept for some useful purpose, and it has no value unless it can be used. Its capability for enjoyment and adaptability to some use are essential characteristics and attributes without which property can not be conceived ; and, hence, any law which destroys it or its value, or takes away any of its essential attributes, deprives the owner of his property. The constitutional guaranty would be of little worth, if the Legislature could, without compensation, destroy property or its value, deprive the owner of its use, deny him the right to live in his own house, or to work at any lawful trade therein. * * *

" In *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166 (177), MILLER, J., says: ' There may be such serious interruption to the common and necessary use of property as will be equivalent to a taking within the meaning of the Constitution.' * * But the claim is made that the Legislature could pass this act in the exercise of the police power which every sovereign State possesses. That power is very broad and comprehensive, and is exercised to promote the health, comfort, safety and welfare of society. Its exercise in extreme cases is frequently justified by the maxim *salus populi suprema lex est.* It is used to regulate the use of property by enforcing the maxim *sic uteri tuo, ut alienum non laedas.* Under it the conduct of an individual and the use of property may be regulated so as to interfere, to some extent, with the freedom of the one and the enjoyment of the other ; and in cases of great emergency,engendering overruling necessity, property may be taken or destroyed without compensation, and without what is commonly called due process of law. The limit of the power can not be accurately defined, and the courts have not been able or willing definitely *

to circumscribe it. But the power, however broad and extensive, is not above the Constitution. When it speaks, its voice must be heeded. It furnishes the supreme law, the guide for the conduct of legislators, judges and private persons, and so far as it imposes restraints the police power must be exercised in subordination thereto.

" In Potter's Dwarris on Statutes, 458, it is said that ' The limit to the exercise of the police power can only be this: the regulation must have reference to the comfort, the safety, or the welfare of society.' "

In *Inhabitants, etc.,* v. *Mayo,* 109 Mass. 315 (319), COLT, J., says : " The law will not allow rights of property to be invaded under the guise of a police regulation for the preservation of health, or protection against a threatened nuisance."

In *Slaughter-House Cases,* 16 Wall. 36 (87) FIELD, J., says : " Under the pretence of prescribing a police regulation the State can not be permitted to encroach upon any of the just rights of the citizen, which the Constitution intended to secure against abridgment."

In *Coe* v. *Schultz,* 47 Barb. 64, a learned judge, speaking of the constitutional limitations upon the police power, says : " I am not willing to concede that the Legislature can constitutionally declare an act or thing to be a common nuisance which palpably, according to our present experience or information, is not and can not be, under any circumstances, a common nuisance, by the common-law definition, or common-law decisions. * * * Under the mere guise of police regulations personal rights and private property can not be arbitrarily invaded, and the determination of the Legislature is not final or conclusive."

The author of Tiedeman Limitations of Police Powers says : "An arbitrary interference by the government, or by its authority, with the reasonable enjoyment of private lands, is a taking of private property without due process of law, which is inhibited by the Constitution. * * *

One can lawfully make use of his property only in such a manner as that he will not injure another. Any use of one's land to the hurt or annoyance of another is a nuisance, and may be prohibited." Section 122.

"But the police power of the Legislature, in reference to the prohibition of nuisances, is limited to the prohibition or regulation of those acts which injure or otherwise interfere with the rights of others. The Legislature can not prohibit a use of lands, which works no hurt or annoyance to the neighbors or adjoining property. The injurious effect of the use of the land furnishes the justification for the interference of the Legislature. The legislative prohibition or regulation of the use and enjoyment of one's private property in land is in violation of constitutional principles, which is not confined to the prevention of a nuisance. A certain use of lands, harmless in itself, does not become a nuisance because the Legislature has declared it to be so." Section 122a.

This author also tersely and correctly states the full scope of restrictive police regulations, when confined within their proper limits, substantially as follows: To compel every one to so use his own, and so conduct himself, as not to injure others or infringe upon their rights.

Tried by these tests, the second section of the ordinance in question, in so far as it relates to the repair of wooden buildings, is clearly invalid. It arbitrarily attempts to take from the owner of property all power to make repairs necessary for its preservation, or necessary for its enjoyment, regardless of the effect which such repairs may have upon the public, upon adjacent property, or upon the rights of others; and applies with equal force to buildings detached and remote from all others as to those in immediate proximity to others; and not only to repairs which would tend to create danger, but also to those which would serve to remove or diminish it.

It will not be contended by any one that the establishment of fire limits will justify the condemnation and removal of wooden buildings previously constructed, simply because they are wooden buildings. Before their destruction or compulsory removal can be justified they must become nuisances.

Yet this ordinance, by forbidding repairs, would accomplish by indirection what could not be done directly. It would first compel the owner to allow it to become and remain a nuisance, and then punish him for so doing by destroying or removing his property.

We have not been able to find an authority anywhere which would sustain appellants' position in this case. The case of *Brady* v. *Northwestern Ins. Co.*, 11 Mich. 425, cited by them, holds that under the charter of the city of Detroit, which expressly authorized the enactment of an ordinance forbidding repairs to wooden buildings, an ordinance which forbade such repairs without the consent of the common council, was valid. That case, in two essential particulars, differed from the case at bar: 1. The charter gave express authority to enact the ordinance; and, 2. The ordinance then in question was not prohibitory, but allowed repairs when consent was first obtained of the common council. The opinion was by a divided court, Campbell, J., filing a strong dissenting opinion, holding the ordinance invalid as applied to a building erected before its enactment, notwithstanding the charter.

The case of *King* v. *Davenport, supra*, was also a case where the charter of the city of Jacksonville conferred express authority, and the ordinance in question only forbade the building or repairing of buildings within the fire limits with other than fire-proof material. A party removed an old shingle-roof from her building, and replaced it with a new shingle-roof. Failing to remove it upon notice, the city marshal removed it. It was held that under the express authority conferred by the

charter the ordinance was valid. The ordinance in that case, instead of prohibiting repairs, simply prescribed the material that might be used in making repairs. These two cases are the only ones cited by the appellants upon the question of the right to prohibit repairs, although many others are cited upon the general power of the city in the establishment of fire limits, and their power to prohibit the erection of buildings. Other authorities bearing upon the right to prohibit or to regulate repairs are as follows: Horr and Bemis Municipal Police Ordinances, p. 214, says: "The making of ordinary repairs to existing buildings can not be prohibited. They must amount to additions or material alterations. Re-shingling a building, for example, is an ordinary repair." See, also, to the same effect, *Regina* v. *Howard*, 4 Ont. 377; *Brown* v. *Hunn*, 27 Conn. 332; *Stewart* v. *Commonwealth*, 10 Watts, 307.

The case of *Ex parte Fisk*, 72 Cal. 125, was a case where an ordinance prohibited the alteration or repair of wooden buildings within the fire limits without permission or authority from the fire wardens. The court discusses, at some length, the provision that certain officers may grant permission to make repairs, and says: "It is clear, however, that a literal compliance with a regulation prohibiting the repairing of a wooden building might work, in some instances, useless hardships. The repair of a leaking roof or broken window would be necessary to the comfort and health of a family, without enhancing the danger which the framers of the ordinance sought to provide against; and repairs of a more extensive character might be made to particular houses, standing in particular localities, without increasing the fire risks. And it is equally clear that no general rule could be established beforehand that would meet the emergencies of individual cases. Therefore the power to give relief in particular instances is conferred on certain officers; and it is not to be presumed that they will exercise it wantonly, or

for purposes of profit or oppression." The court concludes that the conferring of the discretionary power on the fire wardens was valid, and sustained the ordinance.

The case of *City Council, etc.,* v. *Louisville, etc., R. R. Co.,* 84 Ala. 127, was a case where an ordinance prohibited repairing the roof of buildings within the fire limits with wood or other inflammable material. Like *King* v. *Davenport, supra,* it did not prohibit making repairs, but forbade the use of certain material in making them.

In *State* v. *Schuchardt,* 42 La. Ann. 49, it is held that a legislative mandate, authorizing a municipal corporation to prevent the reconstruction in wood of old buildings within certain limits, does not include the mandate to prevent the repairing with shingles of the roofs of buildings originally covered with shingles.

It will be observed, on examining these cases with others that more or less directly bear upon the question involved, that there is wide diversity in the interpretation given to the law in the different courts. Some go so far as to deny the power to interfere at all with the making of ordinary repairs. The weight of authority, however, is clearly with those cases which recognize the power of municipal corporations to regulate the making of repairs to buildings, and treat it as a legitimate exercise of the police power, but none of them go to the extent of sustaining the power of absolutely prohibiting repairs, as is sought to be done in this case.

The complaint contains no averments showing the value of the building proposed to be repaired. It is possible that the part remaining will be of small value, and that this is a case where to repair will mean a substantial rebuilding of the structure. If so, however, it would have been easy to show such fact by specific averment. As it is, we are unable to say, from any averment in the complaint, that the proposed repairs, costing $300 or more, may not be very small, compared with the value of that portion of the building which

remains, and that to restore or rebuild it may not be to preserve valuable property, and to prevent instead of create a nuisance.

In our opinion the circuit court did not err in sustaining the demurrer to the complaint.

Judgment affirmed, with costs.

Filed Sept. 22, 1891.