120  567
162  503
120  567
183  112

## S. W. Meyers

*v.*

## B. W. Baker *et al.*

*Filed at Ottawa May 12, 1887.*

1. Camp meetings—*section 59 of the Criminal Code considered as a police regulation, not as in restraint of trade, etc.* Section 59 of the Criminal Code, making it a penal offence for any one, without the permission of those in charge of a camp meeting, to establish any tent, booth or place for vending provisions or refreshments within one mile of such meeting, with a proviso that any one who has his regular place of business within such limits shall not be required to suspend his business, is not invalid, as being in restraint of trade, or creating a monopoly, or making discriminations, but is a valid law, tending to prevent disturbance and disorderly conduct. The act is a mere police regulation, and one within the legislative power.

2. The proviso in the act, that "whoever has his regular place of business within such limits is not hereby required to suspend his business," was not intended to be limited to those who might have a business within the prescribed limits at the time the act was passed, but applies equally to all who may, in good faith, establish a place of business therein at any time when no camp meeting is in progress or being carried on.

3. The court does not hold that a person, on the eve of a meeting being held, will have the right to establish a booth for the sale of provisions for a short period or during a session of a meeting, and claim protection under the proviso. To avail of the law he must have established a regular, permanent business. When that has been done, he will not be required to suspend during the time a meeting is held.

4. The act does not confer power on those in charge of camp meetings to license the sale of provisions and refreshments. The fact that it confers on such authorities the right to consent or refuse consent, can not be held to authorize them to license.

Appeal from the Circuit Court of Woodford county; the Hon. N. W. Green, Judge, presiding.

This was an action of trespass, brought by the appellant, against B. W. Baker, B. F. Wright, J. F. James, William B. Ward, J. M. Sadler, H. E. Reynolds and F. McPheeters, for an unlawful arrest and false imprisonment.

The defence set up by the pleas and the stipulation of facts is, that the appellees lawfully arrested appellant for perform-

ing acts which, by section 59, chapter 38, of the Revised Statutes, are made a criminal offence, to-wit: That while a camp meeting for religious purposes was being held, he did, upon his own land, within one mile of the camp meeting, and without the permission of the authorities having control of it, erect and maintain a booth for vending provisions and re- freshments. The appellant had no regular place of business within the mile limits. His residence was there, but he never kept a booth there, or anywhere else, until the camp meeting was being held.

A jury was waived, and a trial had by the court, who found for the defendants, and rendered judgment against the appel- lant for the costs.

Mr. WILLIAM G. RANDALL, and Messrs. HOPKINS & HAMMOND, for the appellant:

It is conceded that the legislature may enact suitable police regulations for the good government of the State. *Railroad Co.* v. *Jacksonville*, 67 Ill. 37; *Lake View* v. *Cemetery Co.* 70 id. 191.

The police power, like others, is subject to constitutional limitations. *Railroad Co.* v. *Jacksonville*, 67 Ill. 37.

We contend that the act is one in restraint of trade, or one vesting a business monopoly, or creating discriminations be- tween citizens transacting the same lawful business. *Updyke* v. *Wright*, 81 Ill. 49; *Zanone* v. *Mound City*, 103 id. 558; *Tugman* v. *Chicago*, 78 id. 405; *Chicago* v. *Rumpff*, 45 id. 90.

Power to license is power to impose conditions upon the licensee at discretion, and of taxing the licensee for the priv- ilege of exercising a lawful trade. *Wiggins* v. *Chicago*, 68 Ill. 372; *Schwuchow* v. *Chicago*, id. 444.

It is settled law, that where the police power, inherent in the State, is exercised by the legislature, its exercise must be reasonable, and be such as is required for the good gov- ernment of the State, and is not oppressive of the citizen.

*Railroad Co.* v. *Jacksonville*, 67 Ill. 37; *Lake View* v. *Cemetery Co.* 70 id. 191; *Bloomington* v. *Wall*, 46 id. 489; *Chicago* v. *Rumpff*, 45 id. 90; *Tugman* v. *Chicago*, 78 id. 405.

Mr. Martin L. Newell, for the appellees, contended that the act is only a proper and legitimate police regulation, and one within the constitutional power of the legislature to pass, citing 4 Blackstone's Com. 162; Cooley's Const. Lim. 572; *Thorpe* v. *Railroad Co.* 27 Vt. 149; *Commonwealth* v. *Alger*, 7 Cush. 84; 4 Kent's Com. 340; *Commonwealth* v. *Bearce*, 132 Mass. 548.

Mr. Justice Craig delivered the opinion of the Court:

The decision of this case hinges upon the validity of the following section of our Criminal Code: "Whoever, during the time of holding any camp or field meeting for religious purposes, and within one mile of the place of holding such meeting, hawks or peddles goods, wares or merchandise, or, without the permission of the authorities having charge of such meeting, establishes any tent, booth or other place for vending provisions or refreshments, or sells or gives away, or offers to sell or give away, any spirituous liquor, wine, cider or beer, or practices or engages in gaming or horse racing, or exhibits or offers to exhibit any show or play, shall be fined not exceeding $100 for each offence: *Provided*, that whosoever has his regular place of business within such limits is not hereby required to suspend his business." Rev. Stat. chap. 38, sec. 59.

Meyers, the appellant, and the Normal District Camp Meeting Association of the Methodist Episcopal Church, each own adjoining lands within the incorporated village of Eureka, in Woodford county. The appellant purchased his premises about two years before the camp meeting association purchased its premises, but appellant did not occupy his premises until after the association purchased its grounds and held

meetings thereon. When the meeting commenced, appellant lived on his premises, but he had never kept a booth thereon. After the camp meeting commenced, appellant established his booth, and commenced the sale of his goods, without the consent of the association. Whether he had the right to do so, depends upon the validity of the law.

In the argument of appellant it is said: "We apprehend that an act in restraint of trade, or one erecting and vesting a business monopoly, or one creating discriminations between citizens transacting the same lawful business, or one vesting taxing power in private individuals, corporations or associations, for their own benefit, or one vesting in individuals or associations, or private corporations, power to license trades or business, for their own benefit, would also be beyond the competency of the legislature, * * * and all these we claim the statute in question attempts to do."

The argument that the act is in restraint of trade,—one creating a monopoly and making discriminations,—is based upon the proviso in the act, declaring, "that whosoever has his regular place of business within such limits is not hereby required to suspend his business." We do not think that the proviso, upon a fair construction of its terms, is liable to the objection urged against it. If it was intended, by the proviso, to protect any person who might have a business within the designated limits at the time the act was passed, and not afford protection to any person who might engage in regular business, within the designated limits, after the passage of the act, there might be much force in the position of appellant; but we do not understand that such is the meaning of the proviso. But, on the other hand, we think the manifest intention was to allow any person who might think proper, to establish a place for the vending of provisions or refreshments within the designated limits, at a time when the camp meeting was not in progress, and after such person became established in a regular business he would not be required to

suspend his business during the time the camp meeting was held,—in other words, we think the word "has," in the proviso, should be read "may have." The proviso would then read, "whosoever may have his regular place of business within such limits is not hereby required to suspend his business." Under this construction, no privilege or right is conferred on one which is not granted to all. No monopoly is created by the act, which protects the one and excludes the others, but all persons stand upon an equality under the law, as they should. All who desire may establish a regular place of business,—not temporary, but permanent. We do not hold that a person, on the eve of a meeting being held, would have the right to establish a booth or place for selling provisions or refreshments for a short period, or during a session of the camp meeting, and claim protection under the statute, as this would be a device to defeat the purpose of the law, which could not be sanctioned; but in order to be protected, whoever undertook to avail of the law would have to establish a regular, permanent business, and after such regular business was established, the person engaged in such regular business would not be required to suspend during the session of a camp meeting.

*Tugman* v. *City of Chicago*, 78 Ill. 405, has been cited as an authority sustaining appellant's view. In that case it was held, that an ordinance which prevents one citizen engaging in a particular kind of business in a certain locality, under a penalty, whilst another is permitted to engage in the same business in the same locality, is not only unreasonable, and therefore void, but its direct tendency is to create a monopoly, which the law will not tolerate. Of course, the rule which would control an ordinance would also apply to an act of the legislature, and if the proviso of the act in question protected persons who might be in business when it was enacted, and excluded those who might afterwards engage in business, the case cited would be in point; but, as said before, that construction can not be placed on the law.

It is also said, that vendors of provisions and refreshments can not, under the constitution, be taxed, and that the act empowers the authorities in charge of the meeting to license, which, in effect, is a tax. As we understand the statute, it does not confer the power to license, on the authorities in charge of the meeting. The act merely declares, that whoever, during the time of holding any camp or field meeting, without the permission of the authorities having charge of such meeting, establishes any tent, booth or place for vending provisions or refreshments, within a certain distance of the meeting, shall be fined. The fact that the act confers on the authorities the right to consent, or refuse consent, can not be held to authorize such authorities to license. The right to consent, or refuse consent, is one thing, while the right or power to license a person to conduct a certain business at a certain place is quite a different thing. Had the legislature intended to authorize the authorities to license, language expressing that intention in plain words would no doubt have been used. But however this may be, we see nothing in the language of the act which can be construed as authorizing the authorities to license. The act is a mere police regulation. The purpose of the act is to preserve order, and prevent the disturbance of those engaged in public worship. For many years we have had similar acts in our statute. Section 147 of the Criminal Code of 1845 is an act of a similar character,—one enacted as a police regulation, to prevent a disturbance of a religious congregation. There is, in our judgment, no question in regard to the power and authority of the legislature to pass such laws. The tendency of such laws is to prevent disturbance and disorderly conduct, and preserve peace and quiet, where a large number of people are assembled for religious worship. The statute is a mere police regulation,—one which the legislature had the right to enact. We regard it valid, and free from the objections urged against it.

The judgment will be affirmed.

*Judgment affirmed.*