JOSEPH BERRY AND THOMAS E. ACKLEY, PARTNERS, &c., v. R. F. DeMARIS ET AL.

Argued June Term, 1907—Decided June 8, 1908.

1. Sections 10, 11 and 12 of the Vice and Immorality act (3 *Gen. Stat.*, p. 3710), enact that it shall be lawful for certain officers to seize any booth, tent, boat or vessel, and all articles of traffic of any person—other than those pursuing their regular business in the usual places—who shall have such booth, &c., for the purpose of selling or disposing of such articles of traffic within three miles of any place of religious worship during the times of holding any meeting for religious worship at such places. Such booths, tents, &c., and the articles of traffic are declared to be forfeited, and the officers are empowered to advertise and sell the same, and after deducting the expenses of such seizure and sale, to pay the residue of the proceeds to the overseer of the poor. *Held*, that the provision for confiscating the proceeds of the sale imposed a penalty upon the owner of the property by way of a forfeiture for violating the statute. *Held*, that the owner could not be thus penalized, or his property thus forfeited, without his being first afforded a judicial hearing.
2. The power of the legislature to authorize the summary destruction of property, which it has impressed with the character of a nuisance, is recognized; and the cases of *Wellar* v. *Snover*, 13 *Vroom* 341; *Shriver* v. *Newton*, 16 *Id.* 469, and *Newark* v. *Hunt*, 21 *Id.* 308, are discussed and distinguished.
3. A statute may authorize the sale of property used in violation of a police regulation in some instances.

On demurrer to plea.

Before GUMMERE, CHIEF JUSTICE, and Justice REED.

For the plaintiffs, *Jonathan W. Acton.*

For the defendants, *Thomas B. Hall.*

The opinion of the court was delivered by

REED, J. The declaration is an action of tort. It charges that the defendants, on August 25th, 1906, converted six watermelons, two hundred and fifty quarts of ice cream, half a ton of ice, twenty cases of soft drinks, forty quarts of milk, ten boxes of candy, twenty-six pounds of poultry, one hundred pounds of beef, three bushels of oats, one hundred pounds of cracked corn, thirty-five pounds of butter, seven hundred pounds of hay, thirty pounds of lard and one ham, the property of the plaintiffs.

The second plea sets up certain facts in justification of the tort. The facts so pleaded, it is insisted, legalize the acts of the defendants by force of sections 10, 11 and 12 of the "Act for the suppression of vice and immorality." 3 *Gen. Stat., pp.* 3710, 3711.

Section 10 of that act provides that "from and after the passage of this act it shall not be lawful for any person or persons to erect, place or have any booth, stall, tent, carriage, boat or vessel, or other place for the purpose or use of selling, giving or otherwise disposing of any kind of articles of traffic, spirituous liquors, wine, porter, beer, cider, or any other fermented mixed or strong drinks (except as hereinafter excepted) within three miles of any place of religious worship in this state during the time of holding any meeting for religious worship in such place."

Section 11 provides that "If any person or persons shall violate this act by doing the acts mentioned in the preceding section, the person or persons so offending shall first be informed of his, her or their violation of this act, and shall be warned by any justice of the peace, constable, or two freeholders of the county where the offence is or shall have been committed, to desist from such offence, and to remove such booth, stall, tent, carriage, boat or vessel, together with all such articles of traffic, &c., belonging to or in the possession

of the person so offending; and if such person or persons on receiving such information and warning shall forthwith cease to offend against this act and shall remove at least three miles from such place of religious worship, then no other proceeding under this act shall be had against such person or persons; but if such person or persons shall refuse or neglect immediately to remove when notified or warned as aforesaid, then all the said articles of traffic, spirituous liquors, wine, porter, beer, cider and other fermented, mixed and strong drinks, and all the vessels, chests and other things containing the same, together with such booth, stall, tent, carriage, boat or vessel, or other place prepared or used for the purpose aforesaid, shall be and are hereby declared to be forfeited; and it shall be lawful for any justice of the peace, and constable, with two freeholders of the county, to seize and take possession of all or any part of the said forfeited articles and liquors, together with such booth, stall, tent, carriage, boat or vessel, and at any time within ten days after, to advertise and sell the same; and after deducting and paying the necessary and lawful expenses for such seizure and sale, the residue of the proceeds of such sale or sales shall be paid to the overseer of the poor of the township."

Section 12 provides that "Nothing in the act shall affect any licensed hotel-keeper in his or her ordinary or lawful business at his or her usual place of residence specified in his or her license, nor shall it be so taken and construed as to affect any merchant, shop-keeper, farmer, mechanic, or other person in the usual and lawful prosecution of his or her or their ordinary concerns and business in their usual places of doing such business."  ·

The second plea sets out that the plaintiffs, within three miles of a camp meeting, a place for religious worship, and during times of holding a meeting or meetings for such religious worship, at such place then and there being held, had a certain building or place for the purpose and use of selling, bartering, giving or otherwise disposing of certain articles of traffic, to wit, the articles mentioned in the declaration, and which building or place was then and there being

used by the plaintiffs as a place for the temporary.sale, gift or other disposition, of such articles of traffic, and the same were then and there by the said plaintiffs sold, &c.; that the plaintiffs were warned by the defendant, Potter, as a justice of the peace, the said Potter being then and there duly elected and qualified to perform the duties of a justice of the peace, and by one, Milo, as constable, the said Milo being then and there elected as a qualified person to perform the duties and office of constable; DeMaris and Fox, both freeholders of the county of Cumberland, warned the plaintiffs, who refused to cease from offending, whereupon the articles were taken in the possession of the defendants, advertised and sold, and the expenses of the sale deducted and the residue paid to the overseer of the poor.

The grounds of demurrer to this plea are—*first,* that the plea does not say that Potter, the justice of the peace, and Milo, the constable, were clothed with the authority claimed for them.

This ground, as explained by the brief of the plaintiffs' counsel, rests upon the alleged failure of the plea to say that they were authorized to act in Cumberland county, where the articles were seized. The statute confers power upon a justice of the peace and constable and two freeholders of the county. Assuming that the two officers first mentioned must also be officers within the county, the plea sets out that they were then and there duly elected and qualified to act as such officers. "Then" refers to the last antecedent time mentioned, namely, August 24th, 1906, and "there" refers to the place last antecedently mentioned, namely, in the county of Cumberland, State of New Jersey. It seems, therefore, that the statement was that each was elected and qualified to perform his official duties in the county of Cumberland at the date of the seizure.

It is next insisted that the plea is double. The duplicity of the plea is said to arise from the fact that it first denies the statement in the declaration that the plaintiffs were engaged in the occupation of shop-keepers in the usual and lawful transactions of their ordinary concerns and business, in their

usual place of doing business, and then proceeds to set up other facts as justification. The plaintiffs' brief insists that the plea thus presented two defences, namely, a justification under the statute, also a traverse of certain material facts set out in the declaration.

But the traverse of the fact that the articles were being used by the plaintiffs in conducting a sale in their usual place of business and in the lawful transaction of their ordinary business, did not, in itself, present a defence; for if the traverse was proved to this extent only, the plaintiffs, nevertheless, would have been entitled to recovery.

The allegation in the declaration only became material in view of the entire plea setting out the steps taken pursuant to the statute to sell, in a summary manner, the articles mentioned.

The single defence rested upon the entire plea, a necessary part of which was the statement that the plaintiffs were engaged in conducting a temporary business. There is nothing, therefore, in this point.

The third ground of demurrer is an attack upon the validity of the statute upon which the plea rests the justification. It is insisted that this statute is unconstitutional because it conflicts with the fourteenth amendment of the federal constitution, and it also conflicts with the first and sixth sections of article 1 of the state constitution.

The statute under consideration was originally passed in 1820, and has but once been the subject of judicial consideration. It came before this court in the case of *Rogers* v. *Brown,* reported in *Spenc.* 119. The court construed the act as including within its provisions all articles of traffic, and as not being confined to the sale of intoxicating liquors alone. The constitutionality of the act was not called in question. Indeed, the decision was rendered a year before our present constitution was adopted. I have no doubt of the ability of the legislature, under the police power with which the state is invested, to pass an act providing that hucksters, peddlers and temporary traders shall not assemble and ply their vocations in the vicinity of a religious meeting. The confusion

resulting from the presence of such camp-followers is calcu-
lated to distract the attention from the purpose of the gather-
ing and should afford sufficient ground for legislative recogni-
tion.

Acts providing penalties for the disturbance of religious
gatherings were common in England (1 *Russ. Cr. & M.* 299),
and in this state, Judge Patterson's act for suppressing vice
and immorality, passed in 1798, provided a penalty for dis-
turbing an assembly of people met for religious worship.

In *Commonwealth* v. *Bearse,* 132 *Mass.* 542, the Supreme
Court of Massachusetts had occasion to pass upon the validity
of a statute, in every substantial feature save power to take
and sell property, like the present statute. The opinion of
Justice Devens contained a full discussion of all the objections
raised against the legislation and vindicated its validity.

Similar results were reached in the cases of *State* v. *Cate,*
58 *N. H.* 240; *State* v. *Read,* 12 *R. I.* 137; *Meyers* v. *Baker,*
120 *Ill.* 567; *State* v. *Stovall,* 103 *N. C.* 416.

In these cases the acts of those temporary dealers who
entered within the proscribed territories and plied their avoca-
tions, were made misdemeanors and subjected the intruders
to a penalty.

There is thus abundant authority supporting legislation
which prescribes a punishment by imprisonment, or fine and
forfeiture after trial upon the perpetrator of acts similar to
those mentioned in the present act.

The criticism of the present statute is aimed at that feature
which permits the seizure and sale of the articles exposed for
sale, together with the articles containing them, and the
temporary structure employed for their exhibition, and the
confiscation of the proceeds, without a previous trial.

The fourteenth amendment to the federal constitution,
which provides that no state shall deprive any person of prop-
erty without due process of law, is perhaps no more restrictive
than section 1, article 1 of our constitution, which clause puts
property under judicial protection so that its owner cannot
be deprived of it except by the law of the land. Both include
the proposition that the owner shall not be stripped of his

property without an opportunity to be heard in defence of his property rights. 10 *Am. & Eng. Encycl. L.* 290, 293, *note* 2.

It is entirely settled, however, that the restriction upon the legislative power of the states imposed by either constitution does not extend to a limitation upon the exertion of the police power which inheres in the state. *Barbier* v. *Connolly,* 113 *U. S.* 27; *In re Rahrer,* 140 *Id.* 545.

Inasmuch as the power of the legislature, in the exercise of police power, to declare certain uses of property to be a nuisance, exists, and inasmuch as the power to abate nuisances has always existed, it is apparent that the scope of legislative authority to deal with property in this respect was left unaffected by these constitutional guarantees.

The power of the legislature, however, to fix upon certain uses of property the character of a nuisance, is not unlimited, but is subjected to judicial supervision. *Lawton* v. *Steele,* 152 *U. S.* 133.

The power of the legislature to deal with property which by use becomes a nuisance, by providing for its summary destruction or confiscation, is not unrestricted. 1 *Am. & Eng. Encycl. L.* 78, *note* 4.

The query is whether the legislation upon which the defendants rely in the present case is valid as a support for their action in selling and confiscating the proceeds of the sale of the property of the plaintiffs.

There are cases in abundance in which the power of the legislature to authorize the destruction of property used in violation of a statute, designed as a police restriction, has been judicially vindicated.

In *Weller* v. *Snover,* 13 *Vroom* 341, the legislature provided for the protection of fish in the Delaware river. It empowered the fish warden to visit any apparatus for taking fish for the purpose of removing same. It directed that officer to give notice that such contrivances were known to exist, and that they were declared common nuisances, and to order them to be dismantled. It empowered the officer, if, after ten days from the notice, the dismantling had not taken place,

to proceed to remove and destroy the obstruction. This provision for the destruction of fish baskets was held to be valid.

In *Shivers* v. *Newton,* 16 *Vroom* 469, the legislative provision, which conferred upon a milk inspector the power to condemn and pour upon the ground any milk which he found to be adulterated, was held to be constitutional.

In *Newark, &c., Horse Railroad Co.* v. *Hunt,* 21 *Vroom* 308, the act made glandered horses a public nuisance and authorized their destruction by certain officers. It was held that the act was within the police power of the state. It was held that it was not prohibited by the fourteenth amendment of the federal constitution even though the statute authorized the destruction of obviously diseased animals in advance of judicial determination of the existence of a nuisance.

It was also held, following *Hutton* v. *City of Camden,* 10 *Vroom* 122, that a right of action remained to property owners against the officers who destroyed property, and a right to recover in case there was no statutory nuisance. It was held that so long as the legislature did not attempt to abridge that right, the statute was sound.

So it was held, in *People, ex rel. Copcutt,* v. *Board of Health,* 140 *N. Y.* 1, that jurisdiction to destroy property as a nuisance rested upon the proof that it was a public nuisance.

The power to destroy before trial was vindicated upon the ground that the cause was not final, and that the owner of the property retained his right of action in case the officers destroying the property exceeded their jurisdiction by the destruction of that which was not a nuisance.

The cases of *Shivers* v. *Newton* and *Newark* v. *Hunt, supra,* may be classed as cases exhibiting the legislative ability to provide for the summary destruction of property which is a nuisance *per se.* Glandered horses, likely to spread the disorder to other animals, and adulterated milk (*Deems* v. *Baltimore,* 80 *Md.* 164), are instances of property in itself noxious to the public welfare. So the legislature may authorize the tearing down of buildings erected within fire limits, if these are made nuisances *per se. Baumgartner* v. *Hasty,* 100 *Ind.* 575; *King* v. *Davenport,* 98 *Ill.* 305.

There is, however, another class of nuisances which arises from the particular uses of property, which property is in itself innocuous. The power to abate nuisances of this class at common law extended only to acts which were essential to abolish its use, and did not permit the destruction of the property unless necessary for that purpose. Thus, houses used for the purpose of gaming, and houses used for the purpose of prostitution, could not be destroyed for the purpose of abating the nuisances of gaming and prostitution. Nor could the legislature empower the summary destruction of such houses without a notice and hearing afforded to the owners.

Then there is a class of articles used in violation of police statutes, but also usable for other purposes, about the power to provide for the summary destruction of which there is a diversity of judicial sentiment. This diversity is exhibited in cases dealing with the summary destruction of gaming apparatus. *Lowry* v. *Rainwater,* 70 *Mo.* 152; *State* v. *Robbins,* 124 *Ind.* 308; *Board of Police Commissioners* v. *Wagner,* 93 *Md.* 182.

There is the same diversity of judicial opinion respecting the right to destroy intoxicating liquors in the same circumstances. *Fisher* v. *McGirr,* 1 *Gray* 1; *Lincoln* v. *Smith,* 27 *Vt.* 328; *Oviatt* v. *Pond,* 29 *Conn.* 479; *Sullivan* v. *City of Oneida,* 61 *Ill.* 242.

In the case of *State* v. *Snover, supra,* the legislative ability to empower fish wardens to dismantle and destroy fish baskets set in the Delaware river and its tributaries, in violation of law, was, as already observed, asserted. In that case the point made against the legislation was that the statute warranted the destruction of the materials of which the fish basket was constituted. The court remarked that "the destruction of the basket did not call for any very nice care in preserving the materials of which it was composed." It is true that the justice writing the opinion further remarked that "if the destruction of the basket would not warrant the destruction of the materials of which it was composed, it must yet be admitted that the basket was in the stream in clear violation of the law, and so was forfeited to the state; and if forfeited,

it was lost to the owner when seized, and he could not be injured by its destruction."

This last remark, however, was beside the question whether there could be a forfeiture without a judicial determination of the facts upon which the forfeiture would arise.

The first ground mentioned by the court in *State* v. *Snover, supra,* is in line with the view of the Supreme Court of the United States expressed in *Lawton* v. *Steele,* 152 *U. S.* 133. This case involved the constitutionality of a statute of New York which provided for the summary destruction of fishing nets employed in violation of the provision of a statute. Those provisions were similar to the provisions of the statute dealt with in *State* v. *Snover, supra.*

The federal Supreme Court, after citing State *v.* Snover, remarked: "It is true there are several cases of a contrary purport. Some of these cases, however, may be explained upon the ground that the property seized was of considerable value. In *Ieck* v. *Anderson,* 57 *Cal.* 251, boats as well as nets; *Dunn* v. *Burleigh,* 62 *Me.* 24, teams and supplies in lumbering; *King* v. *Hayes,* 80 *Id.* 206, a horse."

There was here a plain intimation that had the nets been of great value, a value plainly in excess of what it would have cost to try the question of the violation of the statute, or the cost of selling the articles, the court would have required a preliminary judicial determination before destruction, rather than put upon the owner of the property the burden of bringing an action after its destruction.

In both the cases of *State* v. *Snover* and *Lawton* v. *Steele, supra,* the property was so nearly useless for any legal purpose, and was therefore so nearly a nuisance *per se,* that upon that ground alone the ability of the legislature to enact its summary destruction could probably be rested.

The statute in the present case differs from that in the cases just mentioned—*first,* because it deals with property which may be of very great value, and *second,* because it does not provide for the destruction of the property, but for its sale. It cannot be doubted that the legislature may, in some instances, provide for the summary sale of property which is

not a nuisance *per se,* but only becomes such by the manner of its use, or by the manner in which it is permitted to be used. The law respecting straying animals is an instance of this. Cattle when permitted to run at large are, under the statutes of most states, nuisances, and can be impounded, and after notice can be sold; and after deducting the expenses of the impounding, keep and sale of the animals, the proceeds are to be paid over to the owner of the animals. These statutes have been held to be specimens of valid legislation. The owner is given the right to reclaim the animal; the expense of keeping the animal is self-destructive, and an early sale is reasonably necessary, and so long as the proceeds of the sale, after deducting reasonable expenses, are turned over to the owner, it is not a forfeiture of property, but an ordinary remedy for a public grievance.

In *Grover* v. *Huckiens, 26 Mich.* 476, and in *Wilcox* v. *Hemming, 58 Wis.* 144-151, this matter is well discussed.

So in similar cases where for the abatement of nuisances it is essential that property should be taken into the possession of certain officers to prevent its use in an illegal manner, in such instances, if the property is of a perishable character, it may be sold before the judicial determination of the rights of the parties. A provision for the summary sale of milk, fruit, ice cream, would be entirely justifiable, although they were not nuisances *per se.*

The power conferred by the present act does not stop with the taking of possession of the illegally used property but provides for the sale, and after paying the expenses of the taking and the sale, provides that the residue of the proceeds shall be paid to the overseer of the poor of the township.

The statute deals with property of values ranging from the slightest to the greatest. It will include a box of matches; a tin cup; a ton of hay; a railroad car; or a sloop or brig. In the language of Judge Thompson in delivering the opinion in the case of *Fetter* v. *Wilt, 46 Pa. St.* 457, in speaking of a statute similar to the one under consideration: "Had the property been of the value of five thousand dollars instead of the sum named, the power to confiscate it was equally ade-

quate. Nay, even a steamboat or ship might be the subject of this summary process if moored to the shore of some of our larger streams within three miles of a religious meeting, if the owner should attempt to sell or dispose of articles of traffic and refused to move immediately at the bidding of some magistrate."

The feature, however, which particularly distinguishes the statute under consideration from those which have received judicial approval, is that which provides for the forfeiture of the proceeds of the sale of the property.

The forfeiture of the property and the confiscation of proceeds of the sale thereof was designed as a penalty for the violation of the statute. The legislature could not have provided for the levying of a fine, or pecuniary penalty upon the transgressor against the statute, or upon his property without affording him a hearing of a judicial character. Neither could it strip him of any portion of his property as a penalty without affording him similar protection. Forfeiture of the property of a wrong-doer under the criminal law of England followed a trial and conviction. Forfeiture of lands to the crown followed an inquisition. In all the numerous statutes providing for the forfeiture of property used in violation of the revenue laws, I know of none that pretends to effect the forfeiture save through a judicial decree or judgment.

While there is no constitutional prohibition against a statutory provision for the forfeiture of property used to commit an unlawful act, such a statutory provision is not an exertion of the police power, but a provision that must be executed through the judicial power. *Freund Pol. Pow.*, §§ 525, 526.

In the language employed in 19 *Cyc.* 1359: "There can be no forfeiture of property unless the forfeiture be judicially determined. A statute or ordinance which allows the seizure and confiscation of a person's property by ministerial officers without inquiry before a court, or an opportunity of being heard in his own defence, is a violation of the elementary principles of law and the constitution."

This doctrine was recognized by our Court of Errors and Appeals in the case of *Haney* v. *Compton,* 7 *Vroom* 507. The legislature had enacted a statute to protect the rights of citizens of the state to fish for clams and oysters in the waters of the state, and had provided that it should not be lawful for any person who had not been for six months a resident of this state to rake or gather oysters or other shell fish in the waters of this state on board of any vessel; and further enacted that every person who should so offend should pay a penalty, and enacted that the vessel and apparatus for fishing should be seized; that notice should be given to two justices of the peace who were empowered to hear and determine the same; and if the vessel was condemned that it should be sold and the proceeds of the sale appropriated— one-half to the person who made the seizure and one-half to the collector of the county where the offence was committed. This legislation was sustained as an internal police regulation.

It was urged in criticism of the statute that it deprived the owner of the vessel of his property without due process of law, because the vessel could be seized without process being issued and without notice to the owner. The reply of the court to this criticism was—not that a judicial determination was not necessary to support the sale and the appropriation of the proceeds thereof—but the answer of the court was that the statute provided for a proceeding *in rem,* which was itself notice to the owner, and provided that before the condemnation of the vessel there should be a hearing and determination of the matter before a competent tribunal.

For the reason that no such provision is to be found in the statute invoked to support the plea in this case we think the statute is unconstitutional, and the plea setting it up is bad. There should be judgment for the plaintiff on the demurrer to the plea.

In the case of Cooper H. Oliphant *v.* James F. Edward et al., the same questions arise on a demurrer to a plea, and for the reasons just given there should be judgment for the plaintiff on the demurrer to the plea in that case.